372 So.2d 976 (1979)
Charles H. WARDLOW, Jr., Appellant,
v.
CITY OF MIAMI, Robert Murphy and Garland Watkins, Appellees.
No. 78-1283.
District Court of Appeal of Florida, Third District.
June 26, 1979.
Rehearing Denied July 26, 1979.
*977 Gilbride & Heller, and James F. Gilbride, Miami, for appellant.
George F. Knox, Jr., City Atty., and Mikele S. Carter, Asst. City Atty., for appellees.
Before PEARSON, HENDRY and KEHOE, JJ.
HENDRY, Judge.
Appellant/plaintiff, Wardlow, seeks review of a final summary judgment whereby the trial court dismissed with prejudice two counts from the complaint. This opinion is concerned with the count seeking damages for alleged defamation of character; it constitutes a separate, distinct cause of action within the framework of the multi-count complaint.
The pertinent allegations, succinctly stated, are that the appellant was refused employment by the Key West Police Department and was subjected to ridicule, embarrassment, distress and damage to his reputation in the community as a result of having been spoken of in a slanderous manner and context by the City of Miami Police Department's Deputy Commander of Internal Security. It was asserted that the Deputy Commander, Robert M. Murphy, upon request for information about Charles Wardlow, had told a named police captain in Key West that appellant, a former police officer with the City of Miami, was guilty of certain felonious criminal acts.
The City of Miami set forth as one of its affirmative defenses that the deputy commander, as a public officer, has absolute privilege from liability, and, thus, is shielded and rendered immune against a suit for damages based upon allegations of defamation.
Generally, the rule of privilege has been recognized in favor of public officers, whether such privilege is absolute or qualified, as immunizing them from suit for libel or slander for statements made in connection with the performance of judicial, legislative, and executive functions of government, either state, federal or local. The rationale of this rule has been said to be grounded on public policy, the law recognizing certain communications as privileged and, as such, not within the rules imposing liability for defamation. Privileged communications are divided into two general classes, namely: (1) those which are absolutely privileged, and (2) those which are qualifiedly or conditionally privileged. The fundamental distinction between the two lies in the fact that the former excludes liability for a defamatory statement or publication although it may have been made with actual malice, whereas the latter does not protect a defendant who has acted maliciously. See generally, 20 Fla.Jur. Libel and Slander (1958) and 50 Am.Jur.2d Libel and Slander (1970).
A review of the leading Florida cases on the issue of privilege shows that the executive officials of government, including county managers, are absolutely privileged as to defamatory publications made in connection with the performance of duties and responsibilities of their office. McNayr v. Kelly, 184 So.2d 428 (Fla. 1966).[1] *978 The McNayr decision that absolute privilege should apply was on two bases: (1) it is well settled in Florida that public servants, including county and municipal officials, are protected by absolute privilege from liability for defamation for words spoken or written in judicial and legislative activities, however false or badly motivated, and (2) the great weight of authority recognizes no distinction between executive officials and judicial or legislative officials of government on the question of immunity. In Hauser v. Urchisen, 231 So.2d 6 (Fla. 1970) it was determined that statements made by a city commissioner relating to a city prosecutor's respect for truth were absolutely privileged on the basis of public interest requirements. In Cripe v. Board of Regents, 358 So.2d 244 (Fla. 1st DCA 1978), the associate director of the division of planning and analysis of the University of Florida, who was required by a division rule to evaluate the job performances of the employees he supervised, was found to be absolutely privileged as to defamatory statements made by him in connection with the evaluations. The court pointed out in its opinion that to hold otherwise would work to defeat the purpose of the rule requiring employee performance evaluations, and a supervisor would not be candid in his evaluations due to fear of being sued.
The question before us in the cause sub judice, is whether a deputy commander of internal security for a municipal police department is to be accorded absolute privilege or a qualified privilege, and, if the latter obtains, whether material issues of fact remain as to the existence of malice, which would, thus, preclude summary judgment.
We are concerned with the concept of limitation of the seemingly growing across-the-board absolute privilege philosophy  that is, we must define the level where the defense of privilege ceases to be considered absolute and the lesser degree of protection, qualified privilege, arises.
Initially, it is understood that each case must be judged on an individual basis, but it is imperative that certain guidelines be further established for the sake of a common sense analysis to be incorporated into the interpretation of libel and slander cases.
The Restatement of Torts, 2d, Chapter 25, (1977) addresses, generally, the question of absolute privilege at the state level, as construed by the courts, at 255:
"All of the state courts that have considered the question have agreed that the absolute privilege . .. protects the superior officer of the state governments, including at least the governor, the attorney-general, or the heads of state departments whose rank is the equivalent of cabinet rank in the federal government."
The Restatement, supra., speaks to the protection of inferior state officers who have allegedly committed defamation against another in the course of their official duties, § 598 A, at 284:[2]
"An occasion makes a publication conditionally [or qualifiedly] privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties."
We are of the opinion that the appellee/defendant, a lieutenant with the City of Miami Police Department, holding the position of deputy commander of internal security, is qualifiedly privileged. His duties are, without doubt, important to the city's police department and its citizens, but not sufficiently exalted to warrant absolute immunity. The United States Supreme Court in Barr v. Matteo,[3] spoke of the test to be applied when determining the degree of protection for a certain public officer. It is not the title of the office, but the duties *979 with which the particular officer sought to be made to respond in damages is entrusted which must provide the guide in delineating the scope of the rule. The record under review reveals that Lieutenant Murphy has among his duties the responsibility to oversee and conduct investigations of police officers based upon citizen complaints and intra-departmental complaints, as well as to investigate other cases assigned to him by the Chief of Police. We believe that the subject communication was made on a matter in which the person communicating it had a bona fide interest and with respect to which he had a duty, and it was made to a person who had a corresponding interest and duty. The appellee had the right and duty to communicate an evaluation of a former police officer (with appellee's department) to an inquiring official from another police department. It should be borne in mind that the general public is the beneficial recipient where the question of the fitness of a police officer is at issue.[4] Such a benefit to the citizenry must be weighed against the right of an individual to the enjoyment of a good reputation, unassailed. The question as to the existence of malice, however, remains unresolved in the instant cause.
The summary judgment is, therefore, reversed on the issue of absolute privilege, and remanded to the trial court for further proceedings to determine whether actual malice existed, which would have to be proved in order to vitiate the qualified privilege.[5]
Appellant's second point on appeal dealing with the rights of law enforcement officers while under investigation, § 112.532, Florida Statutes (1974), has been considered and determined to be without merit. We affirm the trial court order on this issue.
Accordingly, we reverse and remand on the issue of privilege, and affirm as to the second point appealed.
PEARSON, Judge (dissenting).
I would affirm. It is sufficient to state that on the basis of the authorities cited and the reasoning contained in this opinion, I am of a contrary point of view. I believe the communication was "absolutely" privileged and would hold, as stated in McNayr v. Kelly, 184 So.2d 428 (Fla. 1966), that "executive officials of government are absolutely privileged as to defamatory publications made in connection with the performance of the duties and responsibilities of their office to the same extent as such absolute immunity is afforded to members of the legislative and judicial branches of government.[1] See also Cripe v. Board of Regents, 358 So.2d 244, 245 (Fla. 1st DCA 1978), where it is pointed out that recent decisions "... have moved away from the distinction [of how far down the ladder the absolute privilege extends] on the basis of rank and look rather to the duties which the officer is required to perform."
NOTES
[1] In the McNayr case, the court relied heavily upon the rationale expressed in Barr v. Matteo, 360 U.S. 567, 70 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). That opinion quotes extensively from Gregoire v. Biddle, 177 F.2d 579 (2d Cir.1949). See recent holding, relying upon McNayr, Densmore v. City of Boca Raton, 368 So.2d 945 (Fla. 4th DCA 1979).
[2] See also, Carr v. Watkins, 227 Md. 578, 177 A.2d 841 (Md. App. 1962).
[3] Cite contained in footnote 1.
[4] Interestingly, policemen have been held to be "public officers" within the meaning of the privilege rule and are subject to fair comment and criticism from any member of the public. White v. Fletcher, 90 So.2d 129 (Fla. 1956).
[5] See, Loeb v. Geronemus, 66 So.2d 241 (Fla. 1953), which held that the malice must be "actual" and not merely inferred from the falsity of the statement.
[1] "As a concluding observation, were we to agree to the theory of qualified privilege it would make the courts an arbiter between men rather than between causes. It would place the litigant in the position in every case where defamatory statements were made by others than `high government officials' of having to institute suit to determine in the first instance whether he had a cause of action and then place the awesome responsibility upon the courts of determining whether they would allow a suit to be maintained against the particular individual sued. We think that there should be no distinction between the judicial, legislative and the executive branches of government so far as absolute privilege is concerned. If a distinction is to be made, as we have heretofore stated, it should be made by the legislative branch of government."