403 So.2d 414 (1981)
The CITY OF MIAMI, Robert Murphy, and Garland Watkins, Petitioners,
v.
Charles H. WARDLOW, Jr., Respondent.
No. 57440.
Supreme Court of Florida.
July 30, 1981.
Rehearing Denied October 2, 1981.
*415 George F. Knox, Jr., City Atty., and Mikele S. Carter, Asst. City Atty., Miami, for petitioners.
James F. Gilbride and Lewis N. Brown of Gilbride & Heller, Miami, for respondent.
BOYD, Justice.
This cause is before the Court on petition for certiorari to review the decision in Wardlow v. City of Miami, 372 So.2d 976 (Fla. 3d DCA 1979). Because the decision is in conflict with Cripe v. Board of Regents, 358 So.2d 244 (Fla. 1st DCA), cert. denied, 365 So.2d 710 (Fla. 1978), we have jurisdiction. Art. V, § 3(b)(3), Fla. Const. (1972).
Respondent Charles Wardlow, a former City of Miami police officer, brought this action against the City of Miami, its chief of police Garland Watkins, and police internal security officer Robert Murphy. The complaint was in seven counts and sought both damages and injunctive relief. The only portion of the complaint with which we are concerned is that count which asserted that Lieutenant Murphy had slandered Wardlow in a telephone conversation with a captain of the City of Key West police department.
The Key West police captain initiated the call in order to inquire about the background of Wardlow, who had applied for employment with the Key West police department. In response to the inquiry, Murphy explained that Wardlow had resigned from his job with the City of Miami while under investigation on an accusation of bigamy. Murphy also told the officer that Wardlow had once passed a worthless check.
The trial court granted Murphy's motion for summary judgment as to the count in question on the ground that his comments were absolutely privileged. Wardlow appealed this ruling and the district court of appeal held that Murphy's privilege was not absolute but qualified. The appellate court remanded for a determination of whether there was actual malice.
The district court acknowledged that Murphy "had the right and duty to communicate an evaluation of a former police officer (with appellee's department) to an inquiring official from another police department." Wardlow v. City of Miami, 372 So.2d at 979. Nevertheless, the court concluded that Murphy's duties were "not sufficiently exalted to warrant absolute immunity." Id. at 978. Thus the district court's decision suggests, and respondent argues, that the absolute privilege of communication is limited to persons serving in a high executive capacity, regardless of whether the giving of the evaluation is within the scope of the defendant's duties. We disagree with this interpretation of the law.
It has long been clear that a highranking officer of the executive branch of the national government, in explaining to the public the reasons for a decision or policy, enjoys absolute immunity from suit for libel. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). This Court has held that the chief executive officer *416 of a chartered county government, in reporting to his legislative overseers, is absolutely privileged to freely explain a decision or policy, and is thus immune from suit based on defamatory statements contained in his report. McNayr v. Kelly, 184 So.2d 428 (Fla. 1966).
In both of these decisions, the facts were that the defendants were in high-ranking, political positions within the governmental entity in question. Also, the statements attacked as defamatory were to some extent of a public nature. The courts held the statements privileged because in each instance reporting upon or explaining the reasons for actions or policies was within the scope of the officer's executive function. The issue now is whether the absolute privilege that protects such public statements by executive officials also extends to non-public statements by officers of the executive branch of government under circumstances such as we have here, or whether the qualified privilege that would attach to such comments if made by a private person applies. See Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12 (1942); Putnal v. Inman, 76 Fla. 553, 80 So. 316 (1918); Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906); Axelrod v. Califano, 357 So.2d 1048 (Fla. 1st DCA 1978); Belcher v. Schilling, 349 So.2d 185 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 128 (Fla. 1978).
In Cripe v. Board of Regents, 358 So.2d 244 (Fla. 1st DCA 1978), the associate director of the Division of Planning and Analysis of the University of Florida was sued for comments made in evaluating an employee's job performance. The court acknowledged that there was "uncertainty as to how far down the ladder absolute privilege extends." Id. at 245. However, the court perceived a trend in the direction of emphasis upon the nature of the officer's duties rather than the level of his rank. The court recognized an absolute privilege based on the fact that the associate director was required by administrative rule to evaluate the job performance of employees.
We agree with the court's analysis in Cripe concluding that the controlling factor in deciding whether a public employee is absolutely immune from actions for defamation is whether the communication was within the scope of the officer's duties.
Respondent argues that Cripe should be distinguished from this case because there was no administrative rule requiring Lieutenant Murphy to explain the circumstances under which respondent left his job with the City of Miami police department. However, at the time of Wardlow's departure, Murphy was Deputy Commander of Internal Security and was personally involved in the investigation of accusations of bigamy made against Wardlow. Murphy had also been approached by representatives of the state attorney's office who were handling a case in which Wardlow was accused of passing a worthless check. Since Murphy was the internal investigating officer for these matters, it would have been his job to report on them to his superiors. This was never done because the investigation ceased when Wardlow resigned from the police department. Two years later when the inquiries came from another city's police department, Murphy was serving as Commander of Internal Security. He was in charge of investigating all complaints against city police officers. Clearly it was within the scope of his duties to respond to the inquiries.
While the communication at issue here was privately made, as distinguished from the situation in Barr v. Matteo, we perceive that an important public function was involved. Murphy's job involved attempting to ensure that no unfit persons were allowed to serve as police officers in the City of Miami. An ancillary function, but very important to the public, would be to communicate the results of his department's investigations to inquiring officials from another municipal police department. Therefore, the lack of a rule requiring the reporting or disclosure of such information does not distinguish this case from Cripe. "[T]he same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary *417 acts... ." Barr v. Matteo, 360 U.S. at 575, 79 S.Ct. at 1341.
We therefore quash that portion of the district court's decision that is before us for review and remand with directions that the trial court's order of summary judgment be affirmed.
It is so ordered.
ADKINS, OVERTON and McDONALD, JJ., concur.
SUNDBERG, Chief Justice, and ENGLAND and ALDERMAN, Justices, dissenting:
We would follow the Restatement of Torts 2d, § 598A in its original form or as proposed for revision in Tentative Draft 20 of Restatement 2d (1974), and approve the decision of the district court below.