**JAMASON v. PALM BEACH NEWSPAPERS, et al.**
No. 82-4789
Fifteenth Judicial Circuit, Palm Beach County
June 16, 1983

Joseph D. Farish, Jr., for plaintiff

Talbot D'Alemberte, L. Martin Reeder, Jr., Steel Hector & Davis, for defendant, Palm Beach Newspapers, Inc.

R. WILLIAM RUTTER, JR., Circuit Judge

THIS CAUSE came for hearing on Defendants' Motion for Summary Judgment directed toward the news article attached as Exhibit A to the Complaint. The Court has heard argument, received Defendants' Memorandum of Law and has had an opportunity to review the depositions, pleadings and admissions on file. It is hereby

ORDERED that the Defendants' Motion for Summary Judgment is granted, and Judgment is hereby entered for the Defendants and against the Plaintiff on the Complaint insofar as it pertains to the news article described in paragraph five and attached as Exhibit A to the Complaint.

The grounds on which this Summary Judgment is granted are:

1. The article is a republication of a sworn statement given by a police officer in a deposition taken in a judicial proceeding.

2. The article is protected by the principles of free speech embodied in the First Amendment. Each of these independent grounds is addressed briefly.

The news article (Exhibit A of the Complaint) reports a sworn statement made by a police officer while the officer was acting in the course of his official duties, and where the sworn statement was made during a deposition taken in a judicial proceeding and made a part of the public record. Therefore, the article is protected by the privilege to accurately report statements made by a police officer in connection with his official duties and by the privilege to report on judicial proceedings. See *City of Miami v. Wardlow,* 403 So.2d 414 (Fla. 1981); *Firestone v. Time, Inc.,* 271 So.2d 745, 752-53 (Fla. 1972).

The news article correctly reported the exact words spoken by Agent Nazzaro in his deposition as they appeared in the public record and revealed collateral facts useful to the reader. Even if these collateral facts had not been reported, the news article as read is a true account of Agent Nazzaro's testimony. The only attempt Plaintiff has made to show the article is not a true account of Agent Nazzaro's testimony is his attempt to construe the article's collateral references to "bribes" and "payoffs," which were used in the article and the headline, as being beyond the scope of the deposition testimony. In fact, the words used by Agent Nazzaro at his deposition were not "bribes" and "payoffs"

but, rather, a reference to officials being "on the take." However, as the Plaintiff admitted in his deposition, the term "on the take" is a slang expression commonly understood to refer to a bribe or payoff, and the Plaintiff himself concedes to having used the words in that way.

The news article is protected under the common law privilege of republication, often referred to as neutral reporting. The article fairly reports the deposition in an accurate and objective manner and is therefore privileged. *Edwards v. National Audubon Society, Inc.,* 556 F.2d 113 (2d Cir. 1977); *Layne v. Tribune Company,* 146 So. 234 (Fla. 1933). In Edwards the Court stated that:

> [T]he First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity . . . What is newsworthy about such accusations is that they were made. We do not believe that the press will be required under the First Amendment to suppress newsworthy statements merely because it has serious doubts regarding their truth. Nor must the press take up cudgels against dubious charges in order to publish them without fear of liability for that defamation . . . The public interest in being fully informed about controversies that often rage around sensitive issues demands that the press be afforded the freedom to report such charges without assuming responsibility for them. at page 120.

There is no showing of any common law malice to defeat the privilege and, indeed, the record is entirely barren of any suggestion that the reporter intended any harm or had any reason to intend harm to Chief Jamason.

Even if the other points above were insufficient, because he is a public official, Plaintiff bears the heavy burden of showing there was "actual malice" in the publication. Actual malice requires Plaintiff to prove Defendants told a knowing lie or acted in reckless disregard for the truth. These constitutional principles, first announced in *New York Times v. Sullivan,* 376 U.S. 254 (1964), but having some close parallels in Florida constitutional privileges, (*Coogler v. Rhodes,* 21 So. 109 (Fla. 1897)) are the principles which provide all citizens with free speech.

If free speech is to be protected, it is the duty of the Court to examine the record to see if there is any evidence which would support the claim of actual malice. See *Palm Beach Newspapers, Inc. v. Early,* 334 So.2d 50 (Fla. 4th DCA 1976). This record contains no such evidence. The reporter filed his news report based on the sworn testimony of a police official acting in his official capacity. The fact that the reporter did not

further investigate cannot be a basis for a finding actual malice in any event, *St. Amant v. Thomson,* 390 U.S. 727 (1968); but, in this case, it is also clear from the deposition of the chief of the investigation, Detective Sergeant Anderson, and others that there were no other publicly available sources which the reporter could have investigated.

The Plaintiff attempts to show actual malice through a conversation which occurred between the reporter, Mr. McEvoy, Detective Sergeant Anderson, and Assistant State Attorney, Ken Selvig. There is no factual dispute about this conversation which the reporter candidly acknowledges. Reading the testimony in the way most favorable to the Plaintiff, the facts reveal that McEvoy learned of the Nazzaro deposition and told the police sergeant and the assistant state attorney that this was a news item. Anderson and Selvig indicated they did not think Jamason was involved and requested that the reporter leave Jamason's name out of the article. McEvoy responded that, though he could not alter the written deposition, he would be happy to report the beliefs of the law enforcement officials if they would make those statements for the record. Each of the law enforcement officials declined to be quoted, stating that they would not do so since there was an investigation still in progress.

This Court cannot construe the action of publishing the sworn testimony of a police officer as actual malice, particularly here where the reporter took care to obtain comment from the Plaintiff and made requests of Selvig and Anderson to go on the record with their remarks and opinions.

For these reasons, the Court has ordered summary judgment in Defendants' favor as to the article attached to the Complaint as Exhibit A, retaining jurisdiction over the other articles which are the subject of this case.