**Jerry MARSHALL, Plaintiff-Appellant,**

v.

**CITY OF CAPE CORAL, FLORIDA, a municipal corporation, Robert D. Proctor, as Individual and City Manager of the City of Cape Coral, and Donald Kuyk, as Individual and Utilities Director of the City of Cape Coral, Defendants-Appellees.**

No. 85–3247.

United States Court of Appeals, Eleventh Circuit.

Sept. 3, 1986.

---

Thomas M. Brondstetter, Fort Myers, Fla., for plaintiff-appellant.

Robert L. Donald, Fort Myers, Fla., for defendants-appellees.

Before FAY, CLARK and NIES *, Circuit Judges.

NIES, Circuit Judge:

Jerry Marshall seeks damages and other relief as a result of his removal from his position with the City of Cape Coral, Florida, on the ground that his removal was effected in violation of his procedural and substantive due process rights. Damages are also sought for purportedly defamatory statements made by one of his supervisors. Summary judgment has been granted in favor of the defendants on all counts of the complaint, and Mr. Marshall appeals. We affirm.

* Honorable Helen W. Nies, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

## I.

The following facts are undisputed. Jerry Marshall had been an employee of the City of Cape Coral for approximately ten years, and, at the time of his termination in 1983, he held the position of Superintendent of the Water Production Division, Cape Coral Utilities Department. Don Kuyk, Utilities Director, was Marshall's supervisor.

Mr. Marshall's job responsibilities required him to oversee the city's two water plants. It is undisputed that water quality standards were not observed, the records of the Lime Plant showing about 126 violations over a period of several years.

The water quality problem came to public attention, Mr. Kuyk was investigated, and a complaint filed to revoke Mr. Kuyk's license. After settlement of that matter, Mr. Kuyk met with Mr. Marshall and offered him the opportunity to resign rather than be fired. Mr. Marshall declined to resign and filed a grievance. The grievance was denied since no official action had been taken.

On January 10, 1983, Mr. Kuyk and another employee, Mr. DeLave, met with Mr. Marshall. After learning that Mr. Marshall did not intend to resign, Mr. Kuyk informed Marshall that he was fired from his position, effective January 13, 1983. Mr. Kuyk presented formal charges against Marshall in a letter at that meeting. The letter began with a general statement that the action was being taken "because of your failure to perform the duties specifically stated in your job description." A detailed discussion of particular deficiencies in performance of Marshall's pertinent responsibilities followed. Specifically, he was charged with insubordination in not meeting his chain of command responsibilities and with deficient performance by failing to report numerous water quality violations; to properly supervise personnel; to take corrective measures; and to conform to the mandated maximum contamination limits. Mr. Marshall was asked by Mr. Kuyk to review the charges which he did; the meeting lasted 10 to 15 minutes.

Mr. Marshall thereafter sent two memoranda (each labelled "Grievance Request") to Mr. Kuyk, dated January 11 and January 14, 1983, the latter responding to the merits of the charges in an effort to refute them. On January 18, 1983, Mr. Kuyk replied that he had reviewed the January 14 correspondence and denied the grievance. Kuyk found that the charge of insubordination was admitted and that Marshall offered no evidence to refute the other charges. Mr. Marshall immediately followed up with a request that his "grievance" be submitted to the City Manager for "appeal."

Cape Coral's personnel rules contain two sections which can be read as applicable to review of a removal action against an employee, section 28, entitled "Dismissal," and section 32, entitled "Grievance Procedure." Section 28 provides an employee, upon request, with the right to a conference with the City Manager to review a removal action, at which an employee is entitled to be represented by an attorney. Under section 28, the City Manager renders a final decision as to whether the termination was properly made for cause, and that decision is reviewable only in court. Section 32 review differs, *inter alia*, in that it allows an employee "who does not agree with a decision" by the City Manager to "request a grievance committee be impanelled." The grievance committee ultimately recommends a decision on the matter to the City Manager who makes the final decision.

In the present case, the actions of City Manager Proctor are not in dispute. Prior to reaching a final decision, the City Manager held a conference on January 28, 1983, with Mr. Marshall during which the substance of the charges was discussed. Mr. Marshall was not accompanied by counsel. On February 3, Proctor ruled on the grievance request (as a section 32 grievance) affirming the removal decision.

Shortly after the meeting between Mr. Marshall and the City Manager, Mr. Marshall's attorney wrote a lengthy letter to City Manager Proctor. In that letter of

February 4, the attorney explained that Marshall believed the proceeding was being conducted under section 32 (as did the City Manager), but the attorney believed that section 28, not 32, was the applicable section. The attorney stated that because of Marshall's misapprehension as to the proper procedure, the attorney did not accompany Marshall to the January 28 meeting. It was requested that the final decision be delayed until a new conference was held with Marshall, the attorney, and the City Manager in attendance.

City Manager Proctor replied to Mr. Marshall's attorney on February 7, 1983, explaining that he believed section 32 applied because Mr. Marshall had elected to invoke the grievance procedures. Proctor said he had delayed empanelling a grievance committee, awaiting Mr. Marshall's request after Marshall had had an opportunity to review Proctor's February 3 decision. He advised the attorney that he had based his decision:

> to uphold Mr. Kuyk's decision for dismissal on the fact that the records show that turbidity levels exceeded maximum contamination limits at the Lime Treatment Plant during the period May 1979 through April 1981, with no proof of either the Department of Environmental Regulation or the Director having been notified of the fact. I also included the months of May and June 1982 for which Mr. Marshall stated to me that he did not notify anyone that the MCL's had been exceeded. My memorandum to Mr. Marshall also explains my similar position with regard to the use of the chemical NALCO.

However, he stated that if Mr. Marshall wished "to withdraw the grievance at this point in time and proceeded under Section 28, I will be happy to consider such a request upon receipt of same." In concluding the letter, the City Manager stated further:

Since action under Section 32 of the Personnel Rules and Regulations has progressed to the point of a City Manager decision, I feel that this administrative procedure should be followed to conclusion unless of course Mr. Marshall elects to withdraw the grievance and proceed under Section 28, as I have mentioned previously.

I await your reply.

Neither Mr. Marshall nor his counsel replied. Instead, Marshall filed suit in the Circuit Court of the Twentieth Judicial District, Lee County, Florida, seeking declaratory and injunctive relief under state law. Following amendment of the complaint, which added three counts seeking relief pursuant to 42 U.S.C. § 1983 (1982), the case was removed to the District Court for the Middle District of Florida. Count I of the second amended complaint alleges deprivation of property (Marshall's job) and liberty (his reputation) interests without procedural due process; Count II deprivation of a property interest without substantive due process; Count III that his removal was effected in retaliation for having exercised constitutionally guaranteed rights of free speech; and Count IV, against Kuyk only, for defamation under Florida law.

After the case had been set for trial, Cape Coral[1] moved for summary judgment on Counts I, III and IV, as well as on the request for punitive damages as to all four counts. At the hearing on the motion, the district court allowed Cape Coral to add Count II to its motion. Thereafter, the district court entered a final judgment against Mr. Marshall on all four counts. Mr. Marshall appeals from the final judgment, invoking this court's jurisdiction under 28 U.S.C. § 1291 (1982).

In this appeal, Mr. Marshall maintains that the presence of genuine issues of material fact preclude the granting of a motion for summary judgment, and that the district court erred in allowing Cape Coral

---

**1.** Unless otherwise specified, this opinion will refer to the defendants below collectively as

Cape Coral.

to add Count II at the hearing on the motion.

## II.

In an appeal from an order granting a motion for summary judgment, this court must review the ruling by the district court to determine whether the standard set forth in Fed.R.Civ.P. 56(c) has been met. Considering the evidence in a light most favorable to the non-movant, it must be determined that no genuine issue of material fact has been raised and that the movant is entitled to a judgment as a matter of law. *Trust Company Bank v. MGM/UA Entertainment Company*, 772 F.2d 740, 743–44 (11th Cir.1985); *Sweat v. Miller Brewing Company*, 708 F.2d 655, 656 (11th Cir.1983). In responding to a motion, a party "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). All reasonable inferences arising from the evidence must be resolved in favor of the non-movant, but inferences based upon speculation are not reasonable. *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir.1985).

## III.

### A.

Mr. Marshall argues first that genuine issues of material facts exist as to whether or not he had property and liberty interests arising from his employment, thus, precluding summary judgment.

Cape Coral does not and could not dispute that Mr. Marshall has such rights.

Mr. Marshall had held his position for nearly ten years, had earned certain seniority, retirement and other benefits, and under the personnel rules for the City of Cape Coral, could be removed only "for cause." That much was held to create a protectible property interest in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985). *See Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 & n. 2 (11th Cir.1982). Thus, the question here is whether any specific rights were possibly violated, not whether any such rights exist. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Id.* at 569–70, 92 S.Ct. at 2705–06 (footnote omitted). Once it has been determined that the Due Process Clause applies, "the question remains what process is due." *Loudermill*, 105 S.Ct. at 1493, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593–2600, 33 L.Ed.2d 484 (1972).[2] The parties agree that Marshall was entitled not only to the constitutional rights recognized in *Loudermill*, but also to all procedures afforded to him by Cape Coral's regulations.

---

**2.** Mr. Marshall also asserts that he was deprived of liberty without due process of law as a result of alleged defamatory statements contained in Kuyk's termination memorandum which he says was "published" within the meaning of *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Cape Coral responds by arguing that there was no "publication" sufficient to invoke constitutional protections. That is so, per Cape Coral, *inter alia*, because the disclosure to the press was made pursuant to a Florida statute which compels release of public records upon request with criminal sanctions as a risk of noncompliance.

The newspaper having made a request, disclosure was compelled and the intent required for a "publication" was lacking. According to Mr. Marshall, this creates a factual issue inappropriate for summary judgment. We do not agree. However genuine a factual issue may be lurking in that dispute, it cannot be held material to resolution of this case. Because of our holding *infra* that Mr. Marshall was afforded all of the procedures constitutionally required, it is irrelevant how many alternate theories might have supported his claim of entitlement to due process. For these reasons, we need not resolve the "publication" or liberty issues.

At the pretermination stage, a tenured public employee must receive, as a matter of constitutional rights, "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 105 S.Ct. at 1495. The uncontroverted facts here establish that these requirements were met and Marshall does not assert that they were not. Thus, there is no genuine issue of material fact that the pre-termination procedures afforded Mr. Marshall were constitutionally sufficient.

■ Nor do we see any legal or factual issue which would preclude summary judgment with respect to Marshall's charge that he was denied the process due by the city's regulations. Mr. Marshall's argument is that there is a genuine issue of material fact with respect to whether Section 28 or Section 32 of Cape Coral's Personnel Regulations were applicable to his termination [3] and with respect to whether he was misinformed as to which section applied. The undisputed determinative fact, however, is that the City Manager unequivocally offered to proceed under whichever section Marshall chose.[4] All Mr. Marshall had to do was ask, which he never did. A volitional choice to forego available procedures, however unwise, cannot give rise to a subsequent complaint that one has been "deprived" of procedural protections.

In this respect, the present case presents facts like those in *Lewis v. Hillsborough Transit Authority*, 726 F.2d 664 (11th Cir. 1983), *reh'g denied*, 726 F.2d 668 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). There, a collective bargaining agreement provided an employee with procedural remedies which he failed to pursue. Quoting the district court, this court observed that "[d]ue process was at Plaintiff's disposal; any deprivation of that due process clearly resulted from Plaintiff's own inaction." 726 F.2d at 667.

In sum, Mr. Marshall has failed to either raise a genuine issue of material fact, or to show that the district court erred in its conclusion that he was not, as a matter of law, entitled to prevail on his claim of deprivation of procedural due process.

## B.

The leading case on First-Amendment violations in the context of Section 1983 actions is *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). There the court held that in order to recover on this cause of action, the dismissed employee must show two things: (1) the speech was constitutionally protected, and (2) it was a substantial or motivating factor in his dismissal. If the dismissed employee is able to carry that burden, the burden then shifts to the employer to show that the employee would have been dismissed absent the protected conduct. *Hamm v. Board of Regents*, 708 F.2d 647 (11th Cir.1983).

Mr. Marshall argues that a genuine issue of material fact exists as to whether or not the memorandum written by him to the City Manager which was critical of Supervisor Kuyk was "a substantial factor in his termination." Mr. Marshall admits sending the memorandum he wrote and memoranda of an associate directly to City Manager Proctor. According to Mr. Marshall, that his first amendment rights of free speech were violated is evidenced by the

---

3. Marshall's assertion that the regulations are "facially unconstitutional in that they are unconstitutionally vague" is not developed in his brief. The complaint, however, ties this allegation to the factual issue of which procedure applies.

4. These circumstances render the present case different than *Russell v. Harrison*, 736 F.2d 283 (5th Cir.1984) in which the grant of a motion for summary judgment against the removed employees was held improper. Those employees had no hearing at all, and it was disputed whether the grievance procedure applied to dismissal for financial reasons. Marshall, on the other hand, was receiving a full administrative review pursuant to section 32; the parties agree that section 28 was available in his type of case; and the only reason he did not receive section 28 review is because he failed to request it when given the opportunity.

stated charge that he was guilty of insubordination in bypassing Kuyk. Marshall does not deny that he failed to follow his "chain of command" responsibilities or that a requirement to report through channels is a valid need of management. His argument is that there is an issue of fact with respect to whether the *content* of the memoranda was a substantial factor in his removal. Under his view the stated basis for his removal is a subterfuge, and, thus, his substantive due process rights were violated.

■ If we assume that the content of the memorandum is constitutionally protected and that the insubordination charge must fall, there is no evidence from which to infer that the charge of failure to perform his job responsibilities is also pretextual and that he would not have been removed but for the protected conduct. *See Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576 [5]; *Paschal v. Florida Public Employees Relations Commission,* 666 F.2d 1381, 1384 (11th Cir.), *cert. denied,* 457 U.S. 1109, 102 S.Ct. 2911, 73 L.Ed.2d 1319 (1982). While the exercise of individual liberties must not be chilled, such rights are not a shield to protect one from one's own malfeasance. As stated in *Mount Healthy:*

> [An employee] ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

*Id.* 429 U.S. at 286, 97 S.Ct. at 575.

On this point, Cape Coral relies, *inter alia,* upon Proctor's February 7, 1983, letter to Mr. Marshall's attorney. That letter, which is contemporaneous with the event, indicates that Proctor's decision to uphold the dismissal was based solely on the failure of Marshall to meet proscribed contamination limits and Marshall's failure to report such violations to appropriate authorities. Nowhere does that letter even mention the insubordination charge. The City Manager, in a deposition, reviewed the substance of his January 28 meeting with Mr. Marshall. Regarding the violations and Mr. Marshall's failure to report them, he averred: "I simply couldn't believe it. I was flabbergasted that he sat there and admitted that we had been violating the MCL, and did nothing about it. It was at that point I felt I had no choice [but to uphold the removal]."

To counter this evidence, Marshall's brief points only to the allegations in Count III in which it was alleged that Marshall's memorandum was a substantial factor in his removal. This response is clearly insufficient under Fed.R.Civ.P. 56(e). In view of Mr. Marshall's admissions, it cannot viably be contended that the charges of deficient performance were pretextual. Like the Fifth Circuit, "[w]e cannot say that summary judgment is never appropriate for these employee speech claims where the defendant so clearly had compelling independent reasons for not continuing employment." *Montgomery v. Boshears,* 698 F.2d 739, 743 (5th Cir.1983).

Since Mr. Marshall did not raise a genuine issue of material fact from which to draw an inference which conceivably might entitle him to prevail under the *Mount Healthy* standard, we are unable to disturb the district court's entry of summary judgment in favor of Cape Coral on Mr. Marshall's first amendment and substantive due process claims.

### C.

■ Nor are any issues of fact or errors of law raised by the court's having granted summary judgment on Count IV which charged Kuyk with defamation under Florida law. As the city Utilities Director, Mr. Kuyk enjoyed an absolute immunity under Florida law in connection with the dismissal memorandum. *See, e.g., Skoblow v. Ameri-Manage, Inc.,* 483 So.2d 809 (Fla. 3d

---

**5.** Cape Coral also points out that Marshall does not even argue that forwarding his associate's memoranda to Proctor was an exercise of *his* free speech.

DCA 1986); *Kribs v. City of Boynton Beach*, 372 So.2d 195 (Fla. 4th DCA 1979); *Cripe v. Board of Regents*, 358 So.2d 244 (Fla. 1st DCA 1978). The case cited by Mr. Marshall for the opposite proposition was subsequently reversed by the Florida Supreme Court. *City of Miami v. Wardlow*, 403 So.2d 414 (Fla.1981).

Our decision upholding summary judgment moots any claim to punitive damages.

## IV.

As a final matter, Mr. Marshall alleges that the district court committed reversible error when it allowed Cape Coral to orally amend the summary judgment motion, at the hearing, to include Count II. According to Mr. Marshall, this violated the ten-day notice requirement contained in Fed.R. Civ.P. 56(c). No other argument with respect to the propriety of the grant of summary judgment on this count is advanced.

It is beyond cavil that the ten-day notice requirement of Rule 56(c) is strictly enforced in this circuit. *Herron v. Beck*, 693 F.2d 125, 126 (11th Cir.1982). Indeed, this court has spoken of Rule 56(c) in terms of a "bright-line" test. *Milburn v. United States*, 734 F.2d 762, 766 (11th Cir.1984). The purpose of the ten-day requirement is to guarantee "that the nonmoving party will have an opportunity to marshall its resources and focus its attention on rebutting the motion for summary judgment with every factual and legal argument available." *Id.* citing *Georgia Southern and Florida Railroad Co. v. Atlantic Coast Line Railroad Co.*, 373 F.2d 493, 498 (5th Cir.), *cert. denied*, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967).

This court's strict enforcement of the rule is not in derogation of the harmless error provision of 28 U.S.C. § 2111 (1982). Rather, it is in recognition of the fact that a party will rarely have the opportunity to muster its evidence and arguments absent the required notice. The case at bar presents one of the rare instances in which the non-moving party was afforded every opportunity to marshall its resources and focus its attention on rebutting the motion despite the lack of the required notice.

This case had been pending for almost two years at the time of the summary judgment hearing. Trial was only two weeks away. The parties had taken numerous depositions. A pretrial conference had been held; the parties had entered extensive pretrial compliances, each with amendments. Cape Coral filed a summary judgment motion on Counts I, III, and IV, as well as on the issue of punitive damages as to all four counts. As part of its challenge to punitive damages in connection with Count II, Cape Coral pointed out that no evidence had been discovered to support the claim that Marshall had been dismissed for pretextual reasons, thereby attacking the basic merits of the claim. In this setting, the district court ruled:

> [T]he Court finds it appropriate to consider a summary judgment on the Plaintiff's Second Amended Complaint in its entirety. The Defendants have asked for a summary judgment on the issue of punitive damages prayed for in all counts, and this calls all four counts into question. Additionally, the scheduled trial date of this cause is imminent, so the Court's power to regulate the issues and to eliminate frivolous ones is heightened. Therefore, the Court has allowed the Defendants to amend their Motion to ask for a summary judgment on all four counts.

Marshall's counsel did not suggest to the trial court that he expected to have evidence in support of the court by the time of trial. Nor is that assertion made here. Instead, Mr. Marshall relies on Rule 56(c) as a *per se* rule. We disagree. *Accord Sutton v. Weirton Steel Division*, 724 F.2d 406, 412 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *Oppenheimer v. Morton Hotel Corp.*, 324 F.2d 766 (6th Cir.1963).

Mr. Marshall relies upon *Winbourne v. Eastern Airlines, Inc.*, 632 F.2d 219 (2d Cir.1980), to avoid application of the harmless error rule. In that case, the court correctly noted that there was nothing in

Rule 56(c) that would suggest that the notice requirement "is a discretionary procedural mechanism to be heeded or ignored as the district court deems appropriate on any particular occasion." *Id.* at 219. The *Winbourne* court refused to apply the harmless error rule because counsel for the non-moving party had called the district court's attention to Rule 56(c) and *requested the opportunity* to submit papers in opposition to the motion for summary judgment. *Id.* at 223. *Winbourne* is wholly inapposite. At the hearing Mr. Marshall did not seek additional time in which to submit evidence or argument going to the merits of Count II. That failure renders the district court's action in not giving Mr. Marshall ten-days notice to the summary judgment motion on Count II at most[6] harmless error.

### V.

Neither genuine issue of material fact nor error of law having been shown, the judgment is AFFIRMED.

---

**6.** We do not rule on whether an amendment of a motion for summary judgment on a particular count, *i.e.* from partial to a full judgment, is controlled by this court's precedent on the notice requirement.