[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12488
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cv-00608-MCR-EMT


JAMES R. WELCOME,

                                                    Plaintiff-Appellant,

versus

RAYMOND E. MABUS,
Secretary of the Navy,

                                                    Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 15, 2015)

Before ED CARNES, Chief Judge, JORDAN, and JULIE CARNES, Circuit
Judges.

PER CURIAM:

James R. Welcome, proceeding pro se, filed a lawsuit against Raymond E. Mabus, Secretary of the Navy, alleging that the Navy discriminated against him based on race in violation of Title VII.  The magistrate judge issued a report recommending that the district court grant summary judgment to the Secretary on the ground that Welcome failed to establish a prima facie case of discrimination and failed to show that the Navy's proffered reasons for its actions were pretextual. The district court adopted the report and recommendation and granted summary judgment to the Secretary.  This is Welcome's appeal.[1]

We review de novo the district court's grant of summary judgment, viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving party.  McCullum v. Orlando Regional Healthcare Sys., Inc., 768 F.3d 1135, 1141 (11th Cir. 2014).  "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Id.

---

[1] In his operative complaint, Welcome asserted an additional claim against the Secretary, alleging that the Navy discriminated against him because of his race by failing to refer or select him for a position as a Supervisory Industrial Specialist.  He also alleged that a member of the Navy's Equal Employment Opportunity (EEO) office illegally amended his EEO complaint. The district court treated those allegations as two separate claims and, in an earlier order, dismissed both claims with prejudice; neither claim made it to the summary judgment stage.  In his brief to this Court, Welcome appears to argue that the district court erred in dismissing those claims.  In his notice of appeal, however, Welcome identifies only the order "granting summary judgment for the Defendant."  We have "jurisdiction to review only those judgments, orders or portions thereof which are specified in an appellant's notice of appeal."  Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1528 (11th Cir. 1987).  To the extent Welcome's arguments concern the order of dismissal, we do not consider them.

Welcome's claims arise out of the Navy's use of an automated software system called Resumix to process employment applications.  That system evaluates applicants by comparing their skills, employment preferences, and other relevant characteristics against the job requirements.  Resumix determines whether applicants have the required skills by identifying key terms in their resumes.  It then generates a list of qualified applicants called a Resume Match List.  If an applicant's resume does not contain the key terms reflecting the required skills or if the applicant's stated preferences do not match the position, the system will exclude that person from the Resume Match List and the person will not be referred for further consideration.

Welcome, who is an African-American male, worked for the Navy at a base in Pensacola, Florida.  While he was employed with the Navy, Welcome applied to 33 vacant positions by submitting his resume through Resumix.  The resume he submitted listed his geographic preference as Pensacola and he indicated a preference for permanent, as opposed to temporary, positions. The Navy did not hire him for any of those positions because Resumix did not include his name on the Resume Match Lists[2] and, as a result, he was not referred for further

_____

[2] Welcome asserts that Resumix included his name in the Resume Match List for one of the 33 positions to which he applied because one key term appeared in his resume.  The exhibit he cites, however, does not support that assertion and he point us to no other evidence that supports it.

consideration.  Welcome contends that he was not referred or selected for those positions because of his race.

Title VII expressly prohibits the federal government from discriminating against an applicant or employee "based on race [or] color."  42 U.S.C. § 2000e-16(a).  "[A] plaintiff may prove race discrimination through either direct or indirect evidence."  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1257 (11th Cir. 2012).  When the plaintiff relies upon indirect or circumstantial evidence, we use the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Under that framework, the plaintiff bears the initial "burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).

Once a plaintiff establishes a prima facie case, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions."  Id.  If the employer provides such a reason, the burden of production then shifts back to the plaintiff to supply evidence that the employer's proffered reasons are pretextual.  Id.  The plaintiff cannot satisfy that burden by merely "[q]uarreling with [the employer's] reason," but must instead "meet it head on and rebut it."  Id. at 1088.  The plaintiff also "cannot prove pretext by simply arguing or even showing that he was better qualified than the person who received the

4

position he coveted." Springer v. Convergys Customer Mgmt., 509 F.3d 1344, 1349 (11th Cir. 2007) (alteration and quotation marks omitted).  He must instead "show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [him]." Id. (quotation marks omitted).

Lacking direct evidence,[3] Welcome bears the burden of establishing a prima facie case of discrimination.  Even if he could establish a prima facie case, however, his claims fail because he has not shown that the Navy's proffered reasons for its actions were pretextual.  See Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) ("It matters not whether [the plaintiff] has made out a prima facie case if [ ]he cannot create a genuine issue of material

---

[3] Welcome did submit one document that he seems to believe is direct evidence of discriminatory intent.  The document is titled "ALPHABETICAL LISTING FOR CLASS ACTION," and Welcome alleges that it is a list of African-Americans who had previously filed a class action lawsuit against the Navy.  Welcome's name appears on that list.  Although he does not use the term "direct evidence," he repeatedly refers to the document as a "Black List" and maintains that the Navy's Human Resources Office (HRO) developed the list for discriminatory purposes.  Insofar as Welcome suggests that the document is direct evidence, he is wrong.  Direct evidence must "establish[ ] the existence of discriminatory intent behind the employment decision without any inference or presumption." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (emphasis added).  And while we must draw all reasonable inferences in favor of the non-moving party at the summary judgment stage, "inferences based upon speculation are not reasonable." Kernel Records Oy v. Mosley, 694 F.3d 1294, 1301 (11th Cir. 2012) (quotation marks omitted).  Welcome has proffered no evidence that the HRO created the document in question or that it was kept for discriminatory purposes.  Although the term "Black List" appears in handwriting at the top of the document, Welcome does not specifically allege — and there is no indication — that anyone in the Navy wrote it.  His position would require an inference, based on speculation, that the Navy's HRO created the list and kept it for discriminatory purposes.  See id.

fact as to whether [the employer's] proffered reasons . . . are pretext masking discrimination."). The Secretary articulated a host of legitimate, nondiscriminatory reasons to explain why Welcome was not referred or considered for the jobs to which he applied. The chief reason was that Resumix did not put Welcome's name on the Resume Match Lists[4] because the skills, preferences, and other characteristics reflected in his application did not fit the relevant criteria. For example, his resume did not contain the key terms associated with the required skills for many positions, geographic restrictions rendered him ineligible in several instances, and his stated preference for permanent work did not match vacancies that were identified as temporary or non-permanent. The Navy also cancelled a number of positions without considering any applicants. None of those reasons suggests that the Navy discriminated against Welcome based on his race.

Welcome responds that for at least two positions the Navy ultimately considered or hired white applicants whose resumes also did not include the appropriate key terms and who were less qualified than him. The evidence shows, however, that those applicants contacted the Navy's Human Resources staff to ask why they had not been referred for consideration. Based on those requests, the HR staff manually reviewed their resumes, determined that their skills matched the job

---

[4] As previously noted, Welcome alleges that Resumix did put his name on the Resume Match List for one position. As we have already explained, Welcome offers no credible evidence to support that proposition. See supra n.2.

6

requirements, and then referred them for further consideration.  Welcome does not allege that he contacted the HR staff or asked them to manually review his resume after he was not referred for consideration.  He also has not shown that the disparities between the successful applicants' qualifications and his own "were of such weight and significance," that no reasonable person could have selected them over him.  Springer, 509 F.3d at 1349 (quotation marks omitted).  Welcome also argues that his veteran status should have rendered him eligible for positions that were otherwise subject to geographic restrictions.  That response merely "[q]uarrel[s] with [the Navy's] reason," and does not "meet it head on and rebut it."  Wilson, 376 F.3d at 1088.

Welcome has not created a genuine issue of material fact as to whether the Navy's proffered reasons were pretextual, and the district court correctly granted summary judgment.

**AFFIRMED.**