**Charisse ALLEN, Plaintiff–Appellant,**

**v.**

**HOUSING AUTHORITY OF THE CITY OF AUBURN, ALABAMA, a public corporation, Lee Eastman, in his official capacity as Executive Director of the Housing Authority, Star Paschal, in her official capacity as director of the Section 8 program for the Housing Authority of the City of Auburn, Alabama, Defendants–Appellees.**

---

No. 15–11343.

United States Court of Appeals, Eleventh Circuit.

Nov. 23, 2015.

Charles A. Stewart, III, Jonathan C. Rudy Hill, Bradley Arant Boult Cummings, LLP, Montgomery, AL, for Defendants–Appellees.

Before ROSENBAUM, JULIE CARNES, and DUBINA, Circuit Judges.

PER CURIAM:

Charisse Allen filed an action against the Housing Authority of the City of Auburn, Alabama, alleging that the Housing Authority discriminated against her when it terminated her Section 8 housing, in violation of the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601, *et seq.* ("FHA"). In response, the Auburn Housing Authority filed a motion to dismiss the Amended Complaint, arguing that Allen's claim was barred by the applicable two-year statute of limitations. The district court agreed and dismissed Allen's lawsuit with prejudice. In this appeal, Allen asserts that the district court erred in dismissing her action because the two-year statute of limitations normally applicable to FHA claims was tolled in her case. For the reasons set forth below, we find no error in the dismissal of Allen's FHA claim. Consequently, we affirm the judgment of the district court.

I.

Allen was a tenant of Section 8 housing administered by the Tuskegee, Alabama, Housing Authority.[1] In June or July of

Lowell Landis Sexton, Tracy G. Birdsong, The ADA Group, LLC, Montgomery, AL, for Plaintiff–Appellant.

1. Since we are reviewing an order granting a motion to dismiss, we take the factual allegations from the operative complaint and view them in the light most favorable to Allen. *See Young Apartments, Inc. v. Town of Jupiter,* 529 F.3d 1027, 1031 (11th Cir.2008). We also take the facts in this case from documents attached to Defendants' motions to dismiss, since they are "central to the plaintiff's claim," and their authenticity is not chal-

2010, Allen began the process of requesting to "port," or relocate, from the Tuskegee Housing Authority to the Auburn Housing Authority.

In connection with this request, Allen sought a two-bedroom unit to accommodate her physical and mental disabilities. The Tuskegee Housing Authority approved Allen's request for a two-bedroom home on November 29, 2010.

According to Allen, however, the Auburn Housing Authority—to which she sought to "port"—refused to acknowledge the Tuskegee-granted accommodation and informed Allen that she would have to begin her request for an accommodation anew. On January 24, 2011, Allen again submitted a request for an accommodation.

She also filed a complaint with the Department of Housing and Urban Development ("HUD") against the Auburn Housing Authority in January 2011, alleging that the Auburn Housing Authority violated both the FHA and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "HUD Complaint") by discriminating against her based on her mental and physical disabilities. In the HUD Complaint, Allen asserted that she had met "heavy resistance" from the Auburn Housing Authority's Section 8 Director Star Paschal, who she claimed intentionally caused Allen's move to be more difficult than necessary. In accordance with the FHA, HUD notified the Auburn Housing Authority of the HUD Complaint on January 24, 2011, explaining that it would investigate the matter to determine whether Allen's complaint had merit.

While the HUD Complaint was pending, on March 1, 2011, the Auburn Housing Authority approved Allen's request. Although Allen moved into her new residence at that time, she refused to sign the lease agreement. According to Allen, she refused to sign the agreement because she believed that the rental payment calculation incorrectly failed to deduct or allow for certain medical expenses. In response, the Auburn Housing Authority made repeated demands—through phone calls and letters—that Allen sign the agreement.

Among these, in late March 2011, the Auburn Housing Authority sent Allen a letter directing her to appear at its offices on April 13 to sign the necessary paperwork. The letter also instructed Allen to bring documentation to substantiate her claimed medical expenses. Allen arrived for the meeting, but she asserts that an Auburn Housing Authority representative, Glen Ritta, refused to consider the medical-expense deductions claimed by Allen. Instead, Ritta demanded that Allen sign the lease. Allen again refused and "reacted extremely negatively."

On April 18, 2011, the Auburn Housing Authority's Section 8 Director mailed Allen a Notice of Termination of Assistance. The Notice informed Allen that her Section 8 benefits were being terminated because she refused to sign the lease and because she was a "threat." The Notice advised Allen, however, that she had the right to request an informal hearing.

Allen requested a review of the decision. On April 27, 2011, the Auburn Housing Authority notified Allen that a "documents only review" of her appeal was scheduled for May 6, 2011, because, in Allen's words, "they were afraid of her."[2] The April 27

lenged. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005).

**2.** The letter advising Allen of the hearing states that a few days after Allen received the Termination Notice, she called HUD and told

an investigator that she was "going to come to the Housing Authority [and] lay [her] hands on Ms. Paschal and pop two in her." When the investigator asked Allen to clarify what she meant, Allen stated, "You know what I

letter also stated that review would be limited to the issue of Allen's failure to sign required Section 8 documents, and it informed Allen that the matter would be presented to an independent fact finder.

A retired circuit judge conducted an informal hearing on June 7, 2011, regarding the termination of Allen's Section 8 benefits. During the hearing, the judge heard from witnesses and received evidence, but Allen never appeared. After consideration, the judge concluded that the Auburn Housing Authority had presented "overwhelming evidence" that it was justified in terminating Allen's Section 8 assistance in accordance with HUD regulations. The decision was memorialized in a June 29, 2011, report.

In the interim, on April 29, 2011, HUD issued a letter to Allen regarding her earlier-filed HUD Complaint that had been pending since January 2011. The letter indicated that HUD had completed its investigation and concluded that, "[b]ased on the evidence obtained during the investigation, . . . no reasonable cause exist[ed] to believe that a discriminatory housing practice ha[d] occurred." The letter also informed Allen that HUD had "completed its administrative processing of [her] complaint under the [Fair Housing] Act, and the complaint is hereby dismissed." Allen alleges, after receiving this determination letter, she "continued to pursue administrative remedies through at least March 2013."

Although the record does not contain the letter in which Allen sought review of the FHA determination, it is apparent that sometime prior to September 2, 2011, Allen, in fact, made such a request. A program analyst responded to Allen's request on September 2, 2011, by letter, advising Allen that HUD was responding to her "request for review of the Department's Letter of Findings, under Section 504 of the Rehabilitation Act of 1973 and Determination of No Reasonable Cause pursuant to Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988 . . . ." The letter informed Allen that the "regulation that governs the processing of the complaint, 24 CFR § 8.56(h), allows for review of the [Letter of Findings] if the timely request for review includes supplementary information." In addition, the letter stated that the "reviewing civil rights official, who will either sustain or modify the [Letter of Findings], is reviewing your letter pursuant to 24 CFR 8.56(h). Once the review has been completed, the Department will advise you of its determination." A few days later, on September 13, 2011, the same program analyst sent Allen another letter attaching a copy of his September 2, 2011, correspondence because there had been an incorrect address on file for Allen.

Over three years later, on November 25, 2014, following an apparent inquiry by Allen's counsel, a HUD official notified Allen's counsel that she was "unable to locate the letter of determination for the review requested by Charisse Allen" and that the office would "re-review the case and issue a formal letter of determination as expeditiously as possible."[3] In the interim, but

---

mean. . . . I'm going to shoot her twice." As a result, the Auburn Housing Authority notified the Auburn Police Department of the alleged threat, and the police department issued a no trespass letter to Allen.

**3.** Allen's operative complaint alleges that Allen "continued to pursue administrative remedies through at least March 2013." To support this allegation, Allen filed only an email that Allen forwarded to an employee of HUD on March 15, 2013. The forwarded email was a response that Allen had received to an undisclosed email she had sent to the Office of Public Affairs at the Department of Health and Human Services ("HHS") Office of Inspector General. The subject line of the

still over three years after HUD dismissed the FHA claim, Allen commenced the underlying lawsuit on July 25, 2014. The operative complaint advanced only an FHA claim against the Auburn Housing Authority.

## II.

On February 27, 2015, the district court dismissed Allen's Amended Complaint, finding it to be time-barred by the FHA's two-year statute of limitations. First, the district court noted that Allen did not dispute that April 18, 2011—the date her Section 8 benefits were terminated—was the "occurrence" date for purposes of the accrual of her claim, or that she filed her Complaint on July 25, 2014.[4] Because Allen filed her lawsuit more than two years after the accrual of her FHA claim, the district court recognized that Allen had to rely on the FHA's tolling provision—42 U.S.C. § 3613(a)(1)(B)[5]—to rescue her lawsuit from dismissal. The district court acknowledged that an administrative proceeding that meets § 3613(a)(1)(B)'s re-

quirements tolls the running of the statute of limitations during the proceeding's pendency. Allen asserted that her original HUD Complaint (filed in January 2011) and subsequent correspondence tolled the limitations period. The district court disagreed.

In its order of dismissal, the district court acknowledged that Allen relied on the September 2, 2011, letter from HUD, which informed her that her request for review of HUD's letter of findings under § 504 was pending, to toll the statute of limitations. The court also noted that Allen pointed to email correspondence from a HUD official, dated November 25, 2014, to substantiate her argument that the limitations period was tolled. But in the district court's view, the September 2, 2011, letter could not, as a matter of law, have indicated—and did not indicate—that review of Allen's FHA claim was being undertaken—only that review of her § 504 claim was occurring. And, the district court reasoned, the allegedly ongoing § 504 review

---

email stated, "Fw: Letter I wrote to the President sent from Charisse Allen." Its body read;

> In response to your Email to Ms. Davis, we have reviewed the material you sent.
> Your correspondence shows that you have contacted the correct federal agencies regarding your situation.
> Recommend you continue your efforts to reach resolution with the Department of Housing and Urban Development via their Office of Inspector General.
> If you have not yet heard from the White House since your letter of 2010, you may want to consider contacting them to find out what happened to your correspondence.

We do not find this email to have any relevance to the statute-of-limitations issue or any other issue in this case, as it does not reference any particular complaint or actions that Allen undertook. Moreover, whatever Allen's original "[e]mail to Ms. Davis," the responding HHS employee suggested contact with only HUD's Office of Inspector General, and

Allen's administrative complaint in this case was never pending with HUD's Office of Inspector General. Nothing else in the record demonstrates any interaction by Allen with HUD or the Auburn Housing Authority between September 13, 2011, and November 25, 2014.

4. Allen suggested that the "occurrence" date should be adjusted to account for the fact that she did not receive the notice of termination until August 24, 2011. But even using this date, the action was filed well past the expiration of the two-year statute of limitations.

5. Section 3613(a)(1)(B) provides, in relevant part,

> The computation of such 2–year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice....

proceeding could not have tolled the *FHA*'s statute of limitations. Consequently, the district court found that Allen's FHA claim—the only claim in her operative complaint—had to be dismissed because it was filed after the expiration of the applicable statute of limitations. Allen now appeals.

## III.

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., *de novo*. In doing so, we accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Glover v. Liggett Grp., Inc.,* 459 F.3d 1304, 1308 (11th Cir. 2006). Generally, the scope of review under Rule 12(b)(6) is limited to the four corners of the complaint, but a court may also consider "an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010); *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999).

The interpretation and application of a statute of limitations present legal questions that this Court reviews *de novo. United States v. Rojas,* 718 F.3d 1317, 1319 (11th Cir.2013); *Harris,* 182 F.3d at 802. We may affirm the decision of the district court for any reason supported by the record, even if that ground was not relied upon or considered by the district court. *Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1309 (11th Cir.2012) (citing *Krutzig v. Pulte Home Corp.,* 602 F.3d 1231, 1234 (11th Cir.2010)) ("This court may affirm a decision of the district court on any grounds supported by the record.").

## IV.

The FHA prohibits discrimination in housing on the basis of race, color, religion, sex, national origin, familial status, and disability. 42 U.S.C. § 3601, *et seq.* It also provides a mechanism by which private parties can vindicate their rights. The relevant provision of the FHA states,

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). Thus, the FHA provides for a two-year statute of limitations in which a plaintiff must commence her action. This statute of limitations, however, may be tolled, as § 3613(a)(1)(B) provides.[6] The FHA's tolling provision is at the center of this appeal.

Because the FHA's tolling provision applies only during the timeframe when an administrative proceeding under the subchapter of which the tolling provision is a part is pending, the question becomes whether an FHA determination of no reasonable cause is subject to administrative review. If it is, we must evaluate whether this type of proceeding was pending after Allen received the April 29, 2011, letter informing her that her FHA complaint was dismissed. Allen claims that administrative review of an FHA determination of no reasonable cause is possible and, in this case, such a proceeding was pending. The Auburn Housing Authority disagrees.

Allen makes various arguments as to why the two-year statute of limitations was

---

6. *See supra* at n. 5.

tolled in this case. In short, she argues that the district court improperly found that FHA determinations are not subject to administrative review and that, as a result, the clock on her federal lawsuit began running on April 29, 2011. According to Allen, the district court ignored HUD's interpretations of the FHA's review provisions as embodied in its Notice FHEO 96–1 (which establishes how the government handles the processing of multi-jurisdictional complaints) and in HUD's Fair Housing Complaint process set forth on HUD's website. In Allen's view, the website evidences that administrative review of FHA determinations is possible if requested. *See http://portal.hud.gov/ hudportal/HUD?src=/program_offices/ fair_housing_equal_opp/complaint-process* (last visited November 23, 2015). And since she never heard back from HUD with a resolution regarding the September 2, 2011, letter, the statute of limitations had not run when Allen filed her complaint in the pending case on July 25, 2014.

The success of Allen's appeal depends in part upon whether HUD may administratively review no-cause determinations under the FHA. But nothing in the statutory scheme of the FHA expressly contemplates such review. And unlike with the implementing regulations for § 504, the FHA's implementing regulations do not provide for administrative review of deter-

minations of no reasonable cause. Allen responds to these problems by relying on Notice FHEO 96–1 and HUD's website as evidence that HUD permits administrative review of no-reasonable-cause determinations.[7]

For this reason, we must consider whether Notice FHEO 96–1 and HUD's website are entitled to deference. Typically, to answer this question, we would review both the Notice and website to determine whether they are entitled to any deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).[8] Under *Skidmore*, the weight afforded depends on "the thoroughness evident in [the agency interpretation's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *United States v. Mead Corp.*, 533 U.S. 218, 228, 121 S.Ct. 2164, 2172, 150 L.Ed.2d 292 (2001) (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161, 164).

Here, however, we need not and do not decide whether the provisions contained in Notice FHEO 96–1 and HUD's website are entitled to *Skidmore* deference. Even assuming that HUD's April 29, 2011, determination of no reasonable cause were subject to administrative review, Allen's FHA claim, as presented to the district

---

7. Allen emphasizes that section A.2.d of Notice FHEO 96–1 provides, "If, under Section 504/ADA/section 109, the complainant requests a review, the review by Headquarters will encompass those statutes and the Fair Housing Act finding." Based upon this provision, Allen claims that it is clear that if Allen requested review under § 504, such review will necessarily include review of the FHA finding. Additionally, Allen points to the HUD website, which states that a complainant who disagrees with a determination of no reasonable cause "can request reconsideration of the case" by sending a letter to the

Director of the Office of Enforcement in Washington, D.C."

8. "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron [U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ]-style deference." *Christensen v. Harris Cty.*, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000) (citations omitted).

court, was untimely. Significantly, the implementing regulations for § 504 provide the process by which a § 504 determination may be reviewed. *See* 24 C.F.R. § 8.56. Subsection (h)(3) of the regulation states that the "reviewing civil rights official *shall* either sustain or modify the letter of findings *within 60 days* of the request for review." 24 C.F.R. § 8.56(h)(3) (emphasis added). This decision constitutes the formal determination on administrative review. *Id.*

According to Allen, she sought review of both her § 504 and FHA claims sometime before September 2011, and these multi-jurisdictional claims were being processed pursuant to Notice FHEO 96–1. Because the claims were processed together, Allen would have received notice regarding the status of her appeal of both claims at the same time, in the same letter. And because, under the implementing regulations for § 504, official review of the claims was required to be completed within sixty days of Allen's request for review, Allen was on notice that she should have received a decision on her appeal by the end of October or beginning of November 2011, at the latest. When Allen did not receive notice of a formal determination on administrative review after sixty days, she should have followed up with HUD to be sure that review was actually pending.

But Allen did not do that. Instead, she waited for more than three years before asking HUD about the status of her claim. This delay was plainly unreasonable. While we do not suggest that Allen had to follow up on her claims on the 61st day after her request for review, she was required to have done so within a reasonable time. If that were not the case, the congressionally enacted statute of limitations would be meaningless because a party could always breathe new life into an expired claim by simply inquiring into the status of the claim—no matter how much time had passed since making the claim in the first place.

As we have noted previously, limitations periods "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time." *Crawford v. LVNV Funding, LLC,* 758 F.3d 1254, 1260 (11th Cir.2014) *cert. denied,* ––– U.S. –––, 135 S.Ct. 1844, 191 L.Ed.2d 724 (2015) (quoting *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979)). This is because "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* (citation omitted). Statutes of limitations "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Id.* (citation omitted). Here, by failing to follow up on her FHA claim for over three years, Allen abandoned these claims, and the district court did not err when it dismissed the Amended Complaint for failure to comply with the two-year statute of limitations.

## V.

For the reasons set forth herein, we affirm the district court's dismissal of Allen's FHA claim for failure to comply with the two-year statute of limitations.

**AFFIRMED.**