[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11189

Non-Argument Calendar

_____

KEVIN MURRAY,

Plaintiff-Appellant,

*versus*

LEARJET, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cv-60012-AHS

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and LUCK, Circuit Judges.

PER CURIAM:

Kevin Murray appeals the summary judgment in favor of Learjet, Inc., and against his amended complaint of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), the Florida Civil Rights Act, Fla. Stat. § 760.10, and 42 U.S.C. § 1981. We affirm.

Murray, a black male, worked for Learjet as an airframe and powerplant mechanic. Murray was assigned to work on jobs involving fuel tanks and toilets when his white coworkers were not, but he could not identify a white tech who was not assigned that job. He was also assigned to conduct VFG testing without training after two white coworkers had received training. He was assigned difficult jobs, including completing an engine change, servicing breaks, and fixing a rudder damper problem, because he performed them well. But on other occasions supervisors failed to acknowledge his success fixing doors and removing two engines.

Murray experienced several negative incidents with coworkers. Lead Tech Dave Leadley told him to "Go work on my f-ing airplane." Murray believed that Leadley made the statement because he was black. There was also an incident where management ridiculed him for failing to record a task even though he had correctly recorded it. Murray believed management ridiculed him because they did not respect him.

24-11189                Opinion of the Court                3

During his time at Learjet, Murray never heard anyone use a racial slur. He earned several awards, never received a write up, and his evaluations were positive. He did not apply for another position within the company.

He eventually complained about his pay when his coworkers told him other techs were paid more than him. Murray asked Operations Manager Jim Heasley to see if he was getting paid appropriately because he was a minority. No one witnessed the conversation, but Murray told Human Resources Officer Gabrielle Zaidman about it. Murray believed he suffered retaliation for his complaint because Lead Avionics Tech Jaime Pelchat increased his workload and Lead Tech Ramon Rios found an error in his work and tried to get him fired. He did not know if Pelchat or Rios knew about the conversation with Heasley.

Murray received a letter from Learjet stating that he was covered under a settlement between Learjet and the Department of Labor regarding claims of pay discrimination based on race. The letter included a release agreement that Murray signed to receive back pay waiving all causes of action related to his compensation based on race before the date of his signing in October 2019.

When the COVID-19 pandemic began in 2020, Learjet offered Murray the opportunity to furlough, which he accepted. When Learjet asked him to return from furlough in January 2021, Murray voluntarily retired. He stated that the pandemic and current events, which reminded him of the climate of racism at Learjet, were the reasons he did not return.

Murray filed an amended complaint against Learjet, which moved for summary judgment. Learjet argued that most of the alleged events fell outside the statute of limitations and that Murray released all claims of pay discrimination. It argued that his discrimination claims failed because he could not establish an adverse action or identify similarly situated employees. It argued he had not described conditions sufficiently severe to establish claims of a hostile work environment or constructive discharge. It argued that he had not established his claims of retaliation because he could not establish an adverse action or a causal link between his protected activity and the action. Murray did not respond to the motion after being granted multiple extensions.

The district court granted summary judgment in favor of Learjet. It ruled that Murray had failed to establish his disparate treatment claims by failing to identify an adverse action or non-black comparators. It ruled that Murray had failed to support his claim of a hostile work environment and a constructive discharge with proof of conditions that were sufficiently severe. It ruled that he failed to support his claims of retaliation with proof that any actions taken against him were causally connected to his complaint. Murray filed a motion for relief from the judgment under Federal Rule of Civil Procedure 60(b), which the district court denied.

We review a summary judgment *de novo* and view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272 (11th

Cir. 2021). Summary judgment is appropriate when the record establishes that there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The same analytical framework that applies to discrimination claims under Title VII applies to claims under the Florida Civil Rights Act, *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1300 n.2 (11th Cir. 2023), and section 1981, *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

Contrary to Murray's argument that the district court applied the wrong standard for an unopposed motion for summary judgment, the district court addressed the merits of Learjet's motion and ensured it was supported by the record, as it was required to do. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). And the district court was not required to give Murray additional time to respond after multiple extensions. *See* Fed R. Civ. P. 56(e)(3).

The district court did not err in ruling that Murray failed to establish a prima-facie case of race discrimination. To establish a prima-facie case of disparate treatment, Murray must prove that he is a member of a protected class, was subjected to an adverse action, and that his employer treated similarly situated employees outside his protected class more favorably. *Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319, 1323 (11th Cir. 2006). He need not establish a "significant" or "serious" adverse action. *Muldrow v. City of St. Louis*, 601 U.S. 346, 350, 353 (2024). But there must be some change in an identifiable employment term or condition that left Murray worse

off. *Id.* at 354–55, 359. Although the district court relied on pre-*Muldrow* precedent in concluding that he suffered no adverse action, we may affirm based on any reason supported by the record. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012). There is no evidence that the jobs Murray was assigned were not already within his job duties, such that they could constitute a change in his employment conditions. *See Muldrow*, 601 U.S. at 354–55, 359. And Murray admitted he was assigned those jobs because he performed them well. Even if the assignments to VFG testing and to service fuel tanks and toilets could constitute adverse actions, Murray failed to identify any similarly situated comparators who were treated differently. *See Burke-Fowler*, 447 F.3d at 1323. Murray received good ratings, never applied for a promotion, and voluntarily retired. The district court did not err in concluding he had failed to establish an adverse action or that similarly situated comparators were treated more favorably.

The district court did not err in ruling that Murray had not established claims of a hostile work environment or constructive discharge. To establish a hostile work environment, an employee must prove that he suffered discrimination based on a protected characteristic and that the harassment was sufficiently severe or pervasive. *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836–37 (11th Cir. 2021). To prove that the harassment was severe or pervasive, the employee must prove that a reasonable person would find the environment hostile or abusive. *Id.* at 837. We consider the totality of the circumstances, including the frequency, severity, and physically threatening or humiliating nature of the conduct, and

whether the conduct unreasonably interferes with the employee's job performance. *Id.* In addition to ridiculing him for certain work, which was not based on Murray's race, *see id.* at 836–37, Murray experienced a single offensive utterance when a lead tech told him to "Go work on my f-ing airplane," which does not constitute severe or pervasive harassment, *see id.* And the standard for constructive discharge is even higher than for a hostile work environment. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

The district court also did not err in concluding that Murray had failed to establish a prima-facie case of retaliation because he presented no evidence of a causal connection between his complaint of race discrimination and any alleged instances of retaliation. To establish a prima-facie case of retaliation, Murray must prove that he engaged in statutorily protected activity, that he suffered an adverse action, and that the adverse action was causally related to the protected activity. *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1344–45 (11th Cir. 2022). To prove causation involving a corporate defendant, an employee must prove "that the corporate agent who took the adverse action was aware of the plaintiff's protected" conduct, *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997), or acted at the order of another individual motivated by retaliatory animus, *see Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998). There was no evidence of a causal connection between Murray's complaint and Pelchat's assignment of additional work and Rios's attempt to get him fired. Murray provided no evidence that Pelchat or Rios knew about his

conversation with Heasley or Zaidman or that Heasley or Zaidman told Pelchat or Rios to take any action. *See Raney*, 120 F.3d at 1196; *Llampallas*, 163 F.3d at 1249. The district court did not err in granting summary judgment against Murray's retaliation claims.

We **AFFIRM** the summary judgment in favor of Learjet.